## Wytheville.

### JACKSON v. COMMONWEALTH.

JUNE 21, 1900.

Absent, Riely, J.*

1. APPEAL AND ERROR—*Exclusion or Rejection of Evidence—Bill of Exception—Particularity Required.*—In order that this court may pass upon the action of the trial court in excluding or rejecting evidence, its materiality must be shown. If the witness is permitted to answer and the answer is excluded, the bill of exception should give it; if not so permitted, the bill should show what it was expected or proposed to prove by the witness. Otherwise, this court cannot say. that any injury has been done to the party complaining.

2. HOMICIDE—*Dangerous Character of Deceased.*—In the absence of evidence even tending to show a killing in self-defence, the accused cannot introduce evidence of the dangerous character of the deceased.

3. HOMICIDE—*Self-Defence—Necessity.*—A prisoner cannot justify a killing on the plea of necessity, unless he were without fault in bringing that necessity upon himself. *Hash's Case,* 88 Va. 172, overruled.

4. INSTRUCTIONS—*Evidence to Support—Intent—Presumption.*—In the case at bar, there was evidence tending to support the instruction given, it correctly propounded the law, and it was therefore properly given. In the absence of evidence to the contrary, a man is presumed to have intended to do what he did.

5. HOMICIDE—*Self-Defence—Necessity—Retreating to the Wall.*—Where death ensues on a sudden provocation or sudden quarrel, in order to reduce the offence to killing in self-defence, the accused must prove that, before the mortal blow was given, he declined further

*Judge Riely was prevented by sickness from attending this term.

Opinion.

combat and retreated as far as he could with safety, and that he killed the deceased through the necessity of preserving his own life, or that there was reasonable ground to believe that the killing was necessary to preserve his own life, or save himself from great bodily harm.

Error to a judgment of the County Court of Pulaski county, rendered November 9, 1898, on a prosecution of the plaintiff in error for murder.

*Affirmed.*

The opinion states the case.

*J. C. Wysor* and *T. L. Massie*, for the plaintiff in error.

*Attorney-General A. J. Montague*, for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff in error was found guilty of murder in the second degree and sentenced to the penitentiary for a term of five years.

The first error assigned to the rulings of the trial court was its refusal to allow the character of the deceased as a dangerous man to be shown. Two witnesses were asked if they knew the reputation of the deceased as a dangerous man; they stated that they did, but when asked what that reputation was, the court, upon the motion of the attorney for the Commonwealth, refused to allow the questions to be answered. What the witnesses were expected to testify as to the reputation of the deceased, is not shown by the bills of exceptions.

In order that this court can pass upon the action of the trial court rejecting or excluding evidence, its materiality must be shown. Where a question is asked and the witness is not permitted to answer it, the bill of exceptions should show what the party offering the witness expected to prove by him. If the witness is permitted to answer, and the answer is excluded, the bill of exceptions should show what the answer was; otherwise,

this court cannot say that any injury resulted to the party complaining from the action of the trial court. *Union Life Ins. Co.* v. *Pollard*, 94 Va. 146, 157, and cases cited; *Driver* v. *Hartman*, 96 Va. 518.

But if the bill of exceptions had shown that the defendant expected to prove that the deceased had the general reputation of being a quarrelsome, vindictive and brutal man, we do not think that such evidence was admissible. Placing the most favorable construction upon the evidence of the accused, he and the deceased were engaged in a mutual combat, commenced with their hands and afterwards continued with rocks, both parties reaching for rocks at the same time. From this combat the accused made no effort to retire, but pursued the deceased and threw the rock which killed him, whilst he was moving away from him. The accused had not only not made out a *prima facie* case of self-defence, as was thought necessary in *Harrison's Case*, 79 Va. 374, as a condition precedent to the right to introduce evidence of the dangerous character of the deceased, but the evidence did not tend to show that the defendant did the killing in self-defence. This being so, under all the authorities, the evidence was clearly inadmissible. Wharton's Cr. Ev., sec. 84; 2 Bishop's Cr. Procedure, secs. 625-6, 629.

The next error assigned is the giving of Instruction No. 9, asked for by the Commonwealth. That instruction is as follows:

" That on a trial for murder, the law of self-defence is the law of necessity, and the necessity relied on to justify the killing must not arise out of the prisoner's own misconduct; and if the jury shall believe from the evidence that the prisoner, Charles Jackson, assaulted the deceased, and thereby brought about the necessity of killing the deceased, should they believe there was any such necessity, then the prisoner cannot justify the killing of the deceased by a plea of necessity, unless he was without fault in bringing that necessity upon himself."

The objection urged to this instruction is, that it "virtually told the jury they must find the accused guilty of murder, if he began the affray merely to inflict a battery, and without any felonious intent; and that he could not reduce his crime to any lower grade than murder by the plea of self-defence and by proof sustaining such a plea." We do not so understand the instruction. Its object was to tell the jury that the accused could not justify the killing of the deceased upon the ground of self-defence, and therefore be acquitted, if they believed that he had assaulted the deceased, and by such misconduct brought about the necessity for the killing, if there was such necessity, in order to save his own life. That instruction did not instruct the jury, nor was it intended to instruct them, upon the degree of the prisoner's guilt, whether it was murder or manslaughter, but it was merely intended to tell them that, upon the facts hypothetically stated in the instruction, the prisoner was not entitled to an acquittal.

This is clearly the law. It was so held in *Vaiden's Case*, 12 Gratt. 717, 729-30. Judge Lee, who delivered the opinion of the court in that case, said: " With regard to the necessity that will justify the slaying of another in self-defence, it should seem that the party should not have wrongfully occasioned the necessity; for, a man shall not in any case justify the killing of another by a pretence of necessity, unless he were without fault in bringing that necessity upon himself."

This decision has been followed and the language of Judge Lee quoted approvingly by this court in subsequent cases (*Lewis' Case*, 78 Va. 732; *Honesty's Case*, 81 Va. 298-9; *Clark's Case*, 90 Va. 369), and is fully sustained by the later, as well as the older, text-writers. 1 Minor's Cr. Law, 43; 1 Bish. New Cr. Law, sec. 865; 1 Whar. Cr. Law, sec. 485 (9th ed.); Kerr on Law of Homicide, sec. 179; 1 Hales P. C. 482.

In *Hash's Case*, 88 Va. 172, a somewhat different doctrine

was laid down, but it has been much questioned by the profession, and not only not been followed since, but, in *Clark's Case*, 90 Va. 369, Judge Lewis, in delivering the unanimous opinion of the court, composed of the same judges who decided *Hash's Case*, quotes with approval the language of the court in *Vaiden's Case*, and refers to *Lewis' Case* and *Honesty's Case*, *supra*, in support of it, without referring to *Hash's Case*. So far as *Hash's Case* is in conflict with the doctrine laid down in *Vaiden's Case*, and our decision in the case before us, we feel constrained to overrule it.

The giving of Instruction No. 8, asked for by the Commonwealth, is assigned as error.

This assignment of error was practically abandoned in the oral argument of the case, and properly so, as the instruction complained of was a correct statement of law and applicable to the case. 1 Minor's Cr. Law, 46, and cases cited; 2 Bishop's Cr. Law, sec. 697.

The giving of Instruction No. 10 for the Commonwealth is assigned as error. It is as follows:

"The court instructs the jury that if they believe from the evidence that the prisoner, Charles Jackson, assailed the deceased, and a combat ensued, and in such combat the prisoner killed the deceased, and if they shall further believe that the first assault was made by the prisoner upon the deceased with a preconceived design to kill or to inflict great bodily harm, then the malice of the first assault, notwithstanding the violence, with which it was returned, communicates itself to the last act of the prisoner, and the killing is murder."

The objection urged to this instruction is that there was no evidence upon which to base it. In this view we cannot concur. There was evidence tending to show that the accused had grossly insulted the deceased, and made an assault upon him; that

during the affray the accused kicked the deceased in the stomach or privates and doubled him up, whereupon the deceased broke loose from the accused and ran; that the defendant pursued him, although he was trying to escape; that whilst the deceased was running and the accused was following, the latter threw two rocks with all the power he could, one of which struck the deceased in the back and the other on the head, causing his death. From this and other evidence in the cause, the jury might have believed that the accused insulted and assaulted the deceased for the purpose of doing what he did, for a man is presumed to have intended to do what he did, unless the contrary appears.

The court refused to give instructions numbered 4, 5 and 6, offered by the accused, and this is assigned, as error.

These instructions are all based upon the theory that the accused, when he killed the deceased, was resisting an attack made upon him by the deceased, and killed him in self-defence. The most favorable construction that can be put upon the prisoner's own evidence, as before stated, does not show that the deceased made an attack upon him, but, at most, the affray commenced as a mere fight, or mutual combat, first with the hands and afterwards with rocks, and that at no time did the accused attempt to quit the combat.

In such cases, the right of either party to justify or excuse himself on the ground of self-defence, if he kill the other, is stated by Mr. Bishop, as follows: " If a mere fight or an assault, not murderously meant, is followed up till the conflict is for blood, neither party can avail himself of the perfect defence by killing the other, until he has endeavored to extricate himself by 'retreating to the wall,' as the old phrase is." * * * * *

" Cases of mutual combat are those in which this duty of 'retreating to the wall' oftenest appears. Two men being in the wrong, neither can right himself except by 'retreating to the wall.' So that, when one unexpectedly finds himself so hotly pursued by the other that he can save himself only by taking the

other's life, if he does it, he is guilty of felonious homicide, unless he first withdraws from the place." 1 Bish. New Cr. Law, secs. 869, 870, 871; 1 Whar. Cr. Law, sec. 486a (9th ed.); Minor's Cr. Law, 42, 43.

In *Clark's Case*, 90 Va. 360, 368, it was held that it was a principle of the criminal law that, where death ensues on a sudden provocation or sudden quarrel, without malice prepense, the killing is manslaughter, and in order to reduce the offence to killing in self-defence, the accused must prove two things—viz.: (1) That before the mortal blow was given, he declined further combat and retreated as far as he could with safety; and (2) that he killed the deceased through the necessity of preserving his own life, or that there was reasonable ground to believe that the killing was necessary to preserve his own life, or save himself from great bodily harm. Tested by these principles, it is clear that the instructions refused ought not to have been given. The accused not only did not decline further combat and retreat, but pursued and killed his adversary.

The remaining assignment of error is to the action of the court in refusing to set aside the verdict of the jury because it was contrary to the law and the evidence.

Sufficient reference has already been made to the evidence to show that the verdict of the jury was not contrary to the evidence, and, as we have seen, the court committed no error of law in the trial of the case.

The judgment complained of must be affirmed.

*Affirmed.*